IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TEXAS STANDARD OIL COMPANY | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. G-05-490 |
| | § | |
| FOREST OIL CORPORATION | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES**
**AND DECLARATORY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Plaintiff, TEXAS STANDARD OIL COMPANY (hereinafter referred to as "TXSO"), and, for its Second Amended Complaint for Damages and Declaratory Judgment against Forest Oil Corporation ("Forest"), Mariner Energy, Inc. ("Mariner Energy"), Mariner Energy Resources, Inc. ("MERI"), Apache Corporation ("Apache"), Pioneer Natural Resources USA, Inc. ("Pioneer") and Noble Energy, Inc. ("Noble"), would show as follows:

**I.**
**PARTIES**

1. Plaintiff, Texas Standard Oil Company is a Texas corporation with its principal place of business in Houston, Texas.

2. Defendant, Forest Oil Corporation is a New York corporation doing business in the State of Texas with its principal place of business in Denver, Colorado, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3. Defendant Mariner Energy, Inc., is a Delaware corporation doing business in the State of Texas with its principal place of business in Houston, Texas, and may be served with process through its attorney of record, who has previously appeared in this action.

4. Defendant Mariner Energy Resources, Inc., is a Delaware corporation doing business in the State of Texas with its principal place of business in Houston, Texas, and may be served with process through its attorney of record, who has previously appeared in this action.

5. Defendant Apache Corporation is a Delaware corporation doing business in the State of Texas with its principal place of business in Houston, Texas. Defendant Apache Corporation may be served with process by serving its registered agent, C T Corporation System, 1021 Main Street, Suite 1150, Houston, TX 77002.

6. Defendant Pioneer Natural Resources USA, Inc., is a Delaware corporation doing business in the State of Texas with its principal place of business in Irving, Texas. Defendant Pioneer Natural Resources USA, Inc., may be served with process by serving its registered agent, C T Corporation System, 350 N. St. Paul Street, Dallas, TX 75201.

7. Defendant Noble Energy, Inc., is a Delaware corporation doing business in the State of Texas with its principal place of business in Ardmore, Oklahoma. Defendant Noble Energy, Inc., may be served with process by serving its registered agent, C T Corporation System, 1021 Main Street, Suite 1150, Houston, TX 77002.

## II.
## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter and parties in this case as this dispute arises under the laws of the United States, specifically the Outer Continental Shelf Lands Act, which vests United States district courts with original jurisdiction over cases or controversies arising out of or connected with operations conducted on the Outer Continental Shelf involving exploration, development or production of minerals, or cases or controversies arising out of or

connected with rights to such minerals. This cause of action is brought pursuant to 28 U.S.C.§ 2201, *et. seq.,* and 28 U.S.C. § 1331, and 43 U.S.C. § 1349(b)(1).

9. Venue is proper pursuant to 28 U.S.C.§ 1391.

### III.
### THE OFFSHORE OPERATING, PRODUCTION HANDLING AND FARMOUT AGREEMENTS

10. The foregoing paragraphs are re-alleged as though fully again set forth.

11. TXSO is a non-operating working interest owner who is party to that certain Offshore Operating Agreement covering Block A-552, High Island Area, South Extension, Gulf of Mexico ("HI 552"), originally between Transco Exploration Company, as Operator, and Energy Development Corporation and Freeport Oil Company, as Non-Operators, made as of March 1, 1979, as amended (the "High Island JOA"). Forest is the current Operator under the High Island JOA.

12. Effective March 2, 2006, Forest Energy Resources, Inc. (previously a wholly owned subsidiary of Forest Oil Corporation) merged with a subsidiary of Mariner Energy, Inc. Forest Energy Resources, Inc., was the surviving entity of that merger and then changed its name to Mariner Energy Resources, Inc. Mariner Energy Resources, Inc., is now a wholly owned subsidiary of Mariner Energy, Inc.

13. Forest continues to be the operator of record on Forest-owned offshore properties, including those at issue in this First Amended Complaint, pending completion, filing and approval of formal Designation of Operator forms with the MMS, when , upon information and belief, either Mariner Energy or Mariner Resources will become operator of those offshore properties at issue in this First Amended Complaint.

14. However, title to all of Forest's offshore properties is now held by Mariner Energy Resources, Inc.

15. TXSO is also party to that certain Production Handling, Operations and Maintenance Agreement dated effective December 13, 1989, between the owners of the High Island Block A-552 "A" platform and parties owning interests in High Island Blocks A-551 and A-553 (the "HI 552 Production Handling Agreement.")

16. TXSO is also a non-operating working interest owner who is party to that certain Offshore Operating Agreement covering Block 34, West Delta Area, Offshore Louisiana ("WD 34"), between originally Transco Exploration Company, as Operator, and Freeport Oil Company, Energy Development Corporation, Pioneer Production Corporation, The Continental Group, Inc., and McMoRan Exploration Co., as Non-Operators, made as of January 3, 1977, as amended (the "West Delta JOA"). Forest is the current Operator under the West Delta JOA. At all relevant times, Apache, Noble, and Pioneer were and remain parties to the West Delta JOA.

17. TXSO and the other working interest owners of WD 34 entered into that certain Farmout Agreement between Forest, TXSO, Noble Energy, Inc., and Pioneer Natural Resources USA, Inc., Farmors, and Houston Energy, L.P., Farmee, effective as of February 25, 2004 (the "Farmout Agreement").

**IV.
BACKGROUND**

18. The foregoing paragraphs are re-alleged as though fully again set forth.

19. In March 2004, production ceased from WD 34. Under the terms of the lease, the working interest owners of WD 34 had 180 days to restore production or conduct other operations

to maintain the lease in force and effect. On or about March 19, 2004, TXSO received Forest's AFE No. 042358, dated March 17, 2004, (the "March 17 AFE") proposing certain operations on Well No. 8. TXSO consented to the March 17 AFE on March 19, 2004.

20. During March 2004, Forest, as Operator and on behalf of all of the owners of WD 34, completed negotiations with Houston Energy, L.P. concerning a farmout agreement which would require Houston Energy to drill an exploratory well on WD 34 that would save the lease before the 180 day period to save the lease would have expired. On or about March 22, 2004, TXSO executed the Farmout Agreement. As required by that agreement, an exploratory well ("Well No. 12") was in fact commenced on WD 34 prior to the expiration of the 180 day grace period to begin operations to restore production. Well No. 12 was successful, and was duly placed on production in late 2004.

21. On or about April 13, 2004, Forest proposed a new AFE (the "April 13 AFE"), which it at first numbered the same as the March 17 AFE - No. 042358 – but later changed to No. 042383. The new AFE was dated April 13, 2004. It proposed the same type of operation as the March 17 AFE but constituted an operation different from the March 17 AFE although it involved the same well – Well No. 8.

22. TXSO never consented to the April 13 AFE.

23. Forest conducted the operations proposed in the April 13 AFE despite the consent election by all parties to the March 17 AFE and without waiting for TXSO's election as to the April 17 AFE and falsely declared the April 17 AFE to be a lease saving operation as that term is used in the West Delta JOA.

24. Prior to the Farmout Agreement effective date, TXSO held a 30.00% working interest in WD 34. After execution of the Farmout Agreement, TXSO held a 3.75% working interest, and

5

an overriding royalty of 1.00%, in Well No. 12, a 30.00% working interest in the rest of WD 34 and was placed in a non-consent status by Forest with respect to Well No. 8.

25. Forest, Mariner Energy and Mariner Resources have failed and refused, and continue to fail and refuse, to make revenue payments or production in kind deliveries to TXSO based on production from Well No. 12 on WD 34.

26. TXSO owns both working interests and overriding royalty interests and Forest, Mariner Energy, and/or Mariner Resources have failed and refused to account for or pay TXSO its share of revenues attributable to production from Well No. 12.

27. Because TXSO allegedly non-consented the April 13 AFE operation Forest performed on Well No. 8, Forest has unilaterally invoked the provisions of Article 8.21 of the West Delta JOA requiring forfeiture of a party's entire leasehold interest in the event that such party does not consent to a "lease saving operation" and demanded that TXSO assign all of its interest in WD 34 including its interests in Well No. 12.

28. In addition, Forest, Mariner Energy, and/or Mariner Resources have failed and refused and continue to fail and refuse to account for or pay TXSO its proportionate share of processing revenue under the terms of that certain Production Handling Agreement dated effective July 20, 2004 among Forest and Helis Oil & Gas Company, L.L.C. et al. covering the processing of oil, gas and water from Well No. 12 ("West Delta Production Handling Agreement").

29. In addition, Forest has also improperly offered TXSO's proportionate interest in WD 34 to Apache, Noble and Pioneer, which have either taken or received a proportionate share of TXSO's proportionate interest, all in violation of the West Delta JOA.

30.     On or about October 16, 2003, TXSO completed its audit of the expenditures attributable to operations on HI 552 under the High Island JOA and the HI 552 Production Handling Agreement and on WD 34 under the West Delta JOA for the calendar years 2001 and 2002. TXSO's auditors presented Forest with written exceptions, including exceptions relating to incorrect billings with respect to operations on the HI 552 platform under the High Island Production Handling Agreement. Forest has failed and refused to credit the joint account with amounts erroneously billed to TXSO's interest for the years 2001 and 2002 and has continued to bill TXSO in the same incorrect manner for the years 2003, 2004 and 2005 to date on both HI 552 and WD 34.

31.     In addition to the errors with respect to the High Island Production Handling Agreement, Forest employs an allocation system for its "Eastern Headquarters" and "Eastern" and "Central" Regions wherein a large number of invoices on individual properties are grouped into these regions and then "allocated" to individual properties regardless of which property actually had work done on it; all in a manner wholly unauthorized under both the High Island JOA and the West Delta JOA.

## V.
## CAUSES OF ACTION

**A.   Breach of Contract**

32.     The foregoing paragraphs are re-alleged as though fully again set forth.

33.     Pursuant to the West Delta JOA and the Farmout Agreement, TXSO has a contractual right to share in the proceeds of Well No. 12.

34.     By its failure to make revenue payments or production in kind deliveries to TXSO attributable to production from Well No. 12 as required by the West Delta JOA, Forest has breached

its contractual obligations to TXSO, as a result of which TXSO has suffered actual damages in an amount which exceeds the minimum jurisdictional limits of this Court.

**B.     Accounting**

35.     The foregoing paragraphs are re-alleged as though fully again set forth.

36.     As a result of the above, TXSO requests that this Court order Forest to provide a full accounting of all revenues and expenses associated with the blocks covered by the High Island JOA, the HI 552 Production Handling Agreement, the West Delta JOA and the West Delta Production Handling Agreement from January 1, 2001 to the present.

**C.     Declaratory Judgment.**

37.     The foregoing paragraphs are re-alleged as though fully again set forth.

38.     An actual controversy has arisen and exists between the TXSO and each and every other defendant concerning the interpretation and operation of the non-consent penalty under the West Delta JOA, the rights of TXSO under the West Delta JOA and the Farmout Agreement, and the obligations of each and every other defendant pursuant both to the West Delta JOA and the Farmout Agreement.

39.     Because of the existing controversies, it is necessary and appropriate at this time for the Court to construe the terms and conditions of the West Delta JOA, and to determine and declare the respective rights, obligations and liabilities, that exist among the parties to this action under the West Delta JOA.  Further, Plaintiffs request the Court to award attorney's fees as are just pursuant to all applicable state and federal laws.

40.     Plaintiff must receive judgment as a matter of law from this Court regarding its rights and obligations under the West Delta JOA, and Plaintiff now seeks such a declaration from this

Court, in accordance with Federal Rules of Civil Procedure, Rule 57, and 28 U.S.C. § 2201. TXSO now seeks a declaration from this Court:

    A.    That TXSO is not a non-consenting party to the April 13 AFE operation;

    B.    That the April 13 AFE operation was not authorized under the West Delta JOA and was performed in breach of the West delta JOA;

    C.    That TXSO is not required to assign to any party any of its right, title, and interest in and to Well No. 12 under the West Delta JOA;

    D.    That TXSO retains all its right, title and interest in WD 34 under the West Delta JOA;

    E.    That TXSO retains its rights under the Farmout Agreement;

    F.    That Forest, Mariner Energy, and/or Mariner Resources, be removed as Operators under the High Island and West Delta JOA for its breach of those agreements;

    G.    That Apache, Noble, and Pioneer have no right, title or interest, in or to TXSO's proportionate share of its interest in WD34.

## VI.
## CONDITIONS PRECEDENT

41. All conditions precedent to the Plaintiffs' rights to recover from the Defendants have occurred or have been fully performed.

## VII.
## DAMAGES & ATTORNEY'S FEES

42. As a direct and proximate result of Forest's conduct as described hereinabove, Forest has caused TXSO to sustain damages in an amount greater than $75,000, by its failure to refund

amounts charged to TXSO without its consent, and by its failure to make revenue payments or production in kind deliveries to TXSO based on production from the block covered by the West Delta JOA, and by payment of TXSO's interest to others.

43.     As a direct and proximate result of Forest's actions, TXSO has been required to retain the services of counsel and is entitled to recover its attorney's fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Honorable Court cite the Defendants to appear herein, and, upon notice, hearing and trial, grant a judgment against the Defendants, and each of them, for an amount above the jurisdictional limits of this Court, and including all costs, attorney's fees and expenses incurred by Plaintiff in this action, together with pre-judgment and post-judgment interest at the maximum legal rate, and Plaintiff further requests that this Court grant all other declaratory relief requested, and all relief available at law or in equity, to which the Plaintiff may show itself to be justly entitled.

Respectfully submitted,

/s/ *Francis I. Spagnoletti*

_____
Francis I. Spagnoletti
State Bar No. 18869600
1600 Smith, 45th Floor
Houston, Texas 77002
Telephone:     713-653-5600
Facsimile:      713-653-5656

**OF COUNSEL**:

SPAGNOLETTI & CO.
David S. Toy
State Bar No. 24048029

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that service of the foregoing was on this date automatically accomplished on all known Filing Users through the Notice of Electronic Filing. Service on any party or counsel who is not a Filing User was accomplished via Email, Facsimile, Certified Mail/RRR or U.S. First Class Mail, in accordance with the Federal Rules of Civil Procedure on this 28th day of September, 2006.

                                       /s/ *Francis I. Spagnoletti*
                                       _____
                                       Francis I. Spagnoletti