IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TEXAS STANDARD OIL COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. G-05-490 |
| vs. | § | JURY |
| | § | |
| FOREST OIL CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANTS MARINER ENERGY, INC. AND MARINER ENERGY
RESOURCES, INC.'S SECOND AMENDED ANSWER AND COUNTER-PLAINTIFF
MARINER ENERGY RESOURCES, INC.'S COUNTERCLAIM**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Defendants Mariner Energy, Inc. ("MEI") and Mariner Energy Resources, Inc. ("MERI") hereby answer Plaintiff's Third Amended Complaint for Damages and Declaratory Judgment (the "Amended Complaint") filed by Texas Standard Oil Company ("TXSO") and Counter-Plaintiff Mariner Energy Resources, Inc. files its Counterclaim against TXSO, and would show the Court as follows:

**DEFENDANTS MARINER ENERGY, INC. AND
MARINER ENERGY RESOURCES, INC.'S SECOND AMENDED ANSWER**

Defendants Mariner Energy, Inc. ("MEI") and Mariner Energy Resources, Inc. ("MERI") (sometimes MEI and MERI will be collectively referred to as "Mariner") respond to the allegations set forth in the individually-numbered paragraphs of the Amended Complaint as follows:

1.  While Mariner has no personal knowledge, after making reasonable inquiry, Mariner is without sufficient knowledge or information to either admit or deny the allegations

1

contained in Paragraph 1 of the Amended Complaint.

2. Mariner admits the allegations contained in Paragraph 2 of the Amended Complaint.

3. Mariner admits the allegations contained in Paragraph 3 of the Amended Complaint.

4. Mariner admits the allegations contained in Paragraph 4 of the Amended Complaint.

5. Mariner admits the allegations contained in Paragraph 5 of the Amended Complaint.

6. Mariner admits the allegations contained in Paragraph 6 of the Amended Complaint.

7. Mariner admits the allegations contained in Paragraph 7 of the Amended Complaint.

8. Mariner admits the allegations contained in Paragraph 8 of the Amended Complaint.

9. Mariner denies the allegations contained in Paragraph 9 of the Amended Complaint.

10. Mariner denies the allegations in paragraph 10 of the Amended Complaint.

11. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner re-alleges its responses to the allegations in Paragraphs 1 through 10 of the Amended Complaint in response to Paragraph 11 of the Amended Complaint.

12. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner admits the allegations in Paragraph 12 of the Amended Complaint.

13. Mariner admits the allegations in Paragraph 13 of the Amended Complaint.

14. Mariner denies the allegations in Paragraph 14 of the Amended Complaint as written. Forest Oil Corporation ("FOC") is operator of certain offshore properties formerly owned by FOC, which are now owned by MERI. Regarding properties on which FOC is currently the operator, including those at issue in the Amended Complaint, MERI intends to nominate MEI to become operator, subject to co-owner approval requirements in the various Joint Operating Agreements that govern the various properties and subject to MMS approval.

15. Mariner admits the allegations in Paragraph 15 of the Amended Complaint.

16. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner admits the allegations in Paragraph 16 of the Amended Complaint.

17. Mariner admits the allegations in the first sentence of Paragraph 17 of the Amended Complaint. Mariner admits the allegations in the second sentence of paragraph 17 of the Amended Complaint. Mariner admits the allegation in the third sentence of paragraph 17 of the Amended Complaint as it relates to Apache and Pioneer, but denies the remaining allegations. Mariner admits the allegations in the fourth sentence of Paragraph 17 of the Amended Complaint

18. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner admits the allegations in paragraph 18 of the Amended Complaint.

19. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner re-alleges its responses to the allegations in Paragraphs 1 through 18 of the Amended Complaint in response to Paragraph 19 of the Amended Complaint.

20. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner responds as follows to the allegations of Pargraph 20: Mariner denies the allegations in

the first sentence of Paragraph 20 of the Amended Complaint. Mariner admits the allegations in the second sentence of Paragraph 20 of the Amended Complaint. Mariner admits the allegations of the third sentence of Paragraph 20 of the Amended Complaint. Mariner denies the allegations of the fourth sentence of Paragraph 20 of the Amended Complaint.

21. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner responds as follows to the allegations of Paragraph 21: Mariner denies the allegations in the first sentence of Paragraph 21 of the Amended Complaint. Mariner admits the allegations in the second sentence of Paragraph 21 of the Amended Complaint. Mariner denies the allegations in the third sentence of Paragraph 21 of the Amended Complaint. Mariner admits the allegations in the fourth sentence of Paragraph 21 of the Amended Complaint.

22. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner denies the allegations contained in Paragraph 22 of the Amended Complaint.

23. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner admits the allegations contained in Paragraph 23 of the Amended Complaint.

24. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner denies the allegations contained in Paragraph 24 of the Amended Complaint.

25. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner denies the allegations contained in Paragraph 25 of the Amended Complaint.

26. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner admits the allegations in the first sentence of Paragraph 26 of the Amended Complaint and denies the remaining allegations contained in Paragraph 26 of the Amended Complaint.

27. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner denies the allegations Paragraph 27 of the Amended Complaint.

28. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner denies the allegations in Paragraph 28 of the Amended Complaint.

29. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner admits that TXSO non-consented the April 13 AFE and that FOC demanded that TXSO assign all of TXSO's right, title, and interest in the lease (other than its interest in and production from previously completed wells that are producing, shut-in, or temporarily abandoned) but denies the remaining allegations of Paragraph 29 of the Amended Complaint.

30. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner denies the allegations in Paragraph 30 of the Amended Complaint.

31. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner denies the allegations contained in Paragraph 31 of the Amended Complaint.

32. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner responds as follows to the allegations of Paragraph 32: Mariner is without sufficient information or knowledge to admit or deny the allegations in the first sentence of Paragraph 32 of the Amended Complaint. Mariner admits that portion of the second sentence of Paragraph 32 of the Amended Complaint regarding the fact that TXSO presented MERI's predecessor-in-interest FOC with exceptions, but Mariner denies the remaining allegations in the second sentence in Paragraph 32 of the Amended Complaint. Mariner denies the allegations in the third sentence in Paragraph 32 of the Amended Complaint.

33. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner responds as follows to the allegations in Paragraph 33: Mariner denies the allegation in the first sentence of Paragraph 33 of the Amended Complaint that there were errors with respect to the High Island Production Handling Agreement, but admits that invoices are grouped

together and than allocated to individual properties in conformance with applicable COPAS standards. Mariner denies the remaining allegations in Paragraph 33.

34. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner re-alleges its responses to the allegations in Paragraphs 1 through 33 of the Amended Complaint in response to Paragraph 34 of the Amended Complaint.

35. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner denies the allegations contained in Paragraph 35 of the Amended Complaint.

36. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner denies the allegations contained in Paragraph 36 of the Amended Complaint.

37. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner re-alleges its responses to the allegations in Paragraphs 1 through 36 of the Amended Complaint in response to Paragraph 37 of the Amended Complaint.

38. The request for relief contained in Paragraph 38 of the Amended Complaint need not be admitted or denied, but Mariner denies that TXSO is entitled to any relief.

39. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner re-alleges its responses to the allegations in Paragraphs 1 through 38 of the Amended Complaint in response to Paragraph 39 of the Amended Complaint.

40. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner admits the allegations contained in Paragraph 40 of the Amended Complaint.

41. The request for relief contained in Paragraph 41 of the Amended Complaint need not be admitted or denied, but Mariner denies that TXSO is entitled to any relief.

42  The request for relief contained in Paragraph 42 of the Amended Complaint need not be admitted or denied, but Mariner denies that TXSO is entitled to any relief.

43. While Mariner has no personal knowledge, after making reasonable inquiry, Mariner denies the allegations contained in Paragraph 43 of the Amended Complaint.

44. Mariner denies the allegations contained in Paragraph 44 of the Amended Complaint.

45. Mariner denies the allegations in Paragraph 45 of the Amended Complaint.

## AFFIRMATIVE DEFENSES

46. Mariner asserts the affirmative defenses of equitable and quasi-estoppel.

47. Mariner asserts the affirmative defense of failure of consideration.

48. Mariner asserts the affirmative defense of waiver.

## COUNTER-PLAINTIFF MARINER ENERGY RESOURCES, INC.'S COUNTERCLAIM

Counter-Plaintiff Mariner Energy Resources, Inc. ("MERI"), files its Counterclaim against Texas Standard Oil Company ("TXSO") and for causes of action would respectfully show as follows:

### I. PARTIES

1. MERI is a Delaware corporation with its principal place of business in Houston, Texas. MERI is successor to certain assets of Forest Oil Corporation ("FOC"), including the property at issue herein, effective as of June 30, 2005.

2. TXSO is a Texas corporation and has appeared herein by and through counsel of record.

### II. FACTUAL BACKGROUND

3. MERI and TXSO, among others, are parties to an Offshore Operating Agreement (the "WD34 Operating Agreement") covering N ½ Block 34, West Delta Area, Offshore Louisiana (the "WD34 Property"), effective January 3, 1977. MERI and TXSO, among others,

are successors in interest to the original parties to the WD34 Operating Agreement. FOC is currently the operator under the WD34 Operating Agreement.

4.  On February 28, 2004, the No. 8 Well in the WD34 Property ceased production. At that time, the No. 8 Well was the sole producing well on the property. Under the terms of the lease applicable to the partners' interests in the WD34 Property, the lease would expire one hundred and eighty days after the cessation of production – or August 28, 2004. As a result, on or about March 19, 2004, pursuant to sections 8.1 and 8.2 of the WD34 Operating Agreement, MERI's predecessor-in-interest FOC forwarded to all of its partners (including TXSO) AFE No. 042358 ("Original AFE No. 042358"). Original AFE No. 042358 notified the partners that the No. 8 Well had recently ceased production and that the tubing on the well would be replaced. Original AFE No. 042358 outlined a re-completion plan in the K-3 Sand for the No. 8 Well and notified the partners, as required by section 8.2 of the WD34 Operating Agreement, that the re-completion would be a lease maintenance operation pursuant to section 8.21 of the WD34 Operating Agreement.

5.  On or about April 12, 2004, prior to the date that the partners were required to consent or "non-consent" Original AFE No. 042358, MERI's predecessor-in-interest FOC advised the partners that the proposed re-completion plan to the No. 8 Well had changed in scope and that MERI's predecessor-in-interest FOC recommended a re-completion in the K-5A Sand, rather than the K-3 Sand. On or about April 13, 2004, MERI's predecessor-in-interest FOC sent a revised AFE No. 042358 ("Revised AFE No. 042358") to the partners, which included the revised re-completion plan. This re-completion plan, which merely changed the Sand in which the completion would take place, was also a lease maintenance operation pursuant to section 8.21 of the WD34 Operating Agreement.

6. TXSO did not execute Revised AFE No. 042358, even though all of the other partners executed it. Instead, on April 16, 2004, TXSO faxed to MERI's predecessor-in-interest FOC an executed copy of <u>Original</u> AFE No. 042358. On April 19, 2004, MERI's predecessor-in-interest FOC contacted TXSO and advised TXSO that it had executed and returned Original AFE No. 042358, which had been replaced by revised AFE No. 042358, and that TXSO needed to execute Revised AFE No. 042358. TXSO chose not to respond and did not consent to Revised AFE 042358. As a result, TXSO "non-consented" a lease maintenance operation under section 8.21 of the WD34 Operating Agreement and forfeited its interest in the No. 8 Well.

7. The work on the No. 8 Well commenced on April 20, 2004, at which time MERI's predecessor-in-interest FOC sent TXSO a letter dated November 30, 2004 again advising TXSO that the work on the No. 8 Well constituted a lease maintenance operation under Section 8.21 of the WD34 Operating Agreement. Since TXSO did not consent to the work on the No. 8 Well, TXSO forfeited all of its right, title and interest in the No. 8 Well and was obligated, under the terms of Section 8.21 of the WD34 Operating Agreement, to assign to the other working interest owners all of such right, title and interest in the lease (other than its interest in and production from previously completed wells producing, shut-in or temporarily abandoned). Section 8.21 of the WD34 Operating Agreement provides, in relevant part:

> A party electing not to participate in a lease maintenance operation will assign to the participating parties in the proportions in which they participate therein, all of its right, title and interest in such lease, or the affected portion thereof, free and clear of any burdens thereon as provided in Paragraph 8.16, retaining, however, its interest in and production from previously completed wells which are producing, shut-in, or temporarily abandoned. Such assignment will be promptly signed before witnesses, acknowledged and delivered in the form set forth in Exhibit "B" hereto. If only a portion of a lease is involved the participating parties at their election may require an assignment of operating rights in the form attached hereto as Exhibit "C", in lieu of the assignment of all interest.

To date, TXSO has refused and continues to refuse to execute the appropriate assignments of its

9

interests to the other partners as required by the WD34 Operating Agreement.

8.  On or about February 25, 2004, certain of the parties to the WD34 Operating Agreement, including MERI's predecessor-in-interest FOC and TXSO, entered into a Farmout Agreement with Houston Energy LP (the "Farmout Agreement"). Pursuant to that Farmout Agreement, Houston Energy LP had the option, but was not required, to drill a well on the WD34 Property to earn an interest in that well and that property. On or about August 1, 2004, Houston Energy LP elected to take this option and drilled the No. 12 Well on the WD34 Property.

9.  MERI and TXSO, among others, are also parties to an Offshore Operating Agreement (the "HI552 Operating Agreement") covering Block A-552, High Island Area, South Extension, Gulf of Mexico ("HI552"), effective March 1, 1979. MERI and TXSO, among others, are successors in interest to the original parties to the HI552 Operating Agreement. FOC, as successor to Transco Exploration Company, is the operator under the HI552 Operating Agreement. TXSO, as successor to Freeport Oil Company, currently holds a 35% non-operator working interest in HI552 and is responsible for 35% of the expenditures incurred for the development and operation of HI552, in accordance with Paragraphs 3.1, 3.2, 3.3 and 8.25 of the HI552 Operating Agreement.

10.  Finally, MERI and TXSO, among others, are parties to a Production Handling, Operations and Maintenance Agreement (the "HI552 HOM Agreement") covering HI552, effective November 20, 1989. FOC, as successor to Amerada Hess, is the operator under the HI552 HOM Agreement. In accordance with the HI552 agreement, TXSO is responsible for its proportionate share of the operating expenses incurred by MERI and/or MERI's predecessor-in-interest FOC at HI552.

11. In May 2003, TXSO instituted an audit of its billings from MERI's predecessor-in-interest FOC associated with HI552 and WD34. TXSO completed this audit, and shared its finding with MERI's predecessor-in-interest FOC, on or about October 16, 2003. TXSO presented MERI's predecessor-in-interest FOC with a number of audit exceptions related to the billings for operations conducted at HI552. In May 2004, MERI's predecessor-in-interest FOC appropriately responded to TXSO's exceptions, granting some and denying others. In total, TXSO requested $506,486.42 in audit exception amounts, and MERI's predecessor-in-interest FOC granted $359,494.52. In July 2004, TXSO requested further clarification of MERI's predecessor-in-interest FOC's partial denial of one of its audit exceptions, to which MERI's predecessor-in-interest FOC responded, providing a full explanation, in December 2004. MERI's predecessor-in-interest FOC had no further communication from TXSO regarding the audit or any of its audit exceptions.

### III. BREACH OF CONTRACT/ SPECIFIC PERFORMANCE

12. MERI reasserts paragraphs 3 through 11, inclusive.

13. TXSO did not consent to the lease maintenance operation for the No. 8 Well described in and represented by Revised AFE 042358. As a result, pursuant to section 8.21 of the WD34 Operating Agreement, TXSO forfeited its interest in the WD34 Property effective April 1, 2004. This forfeiture included any interest that TXSO might have earned in the No. 12 Well, which was drilled by Houston Energy LP pursuant to the Farmout Agreement, and which was drilled subsequent to TXSO's forfeiture *and* to the commencement of the lease maintenance operation on the No. 8 Well.

14. To date, TXSO has refused and continues to refuse to execute the appropriate assignments of its interest in the No. 8 Well (and any subsequent wells drilled on the WD34

11

Property) to the other partners as required by section 8.21 of the WD34 Operating Agreement. MERI requests that the Court order TXSO to specifically perform its obligations under the WD34 Operating Agreement and to execute the appropriate assignments of its interest in the No. 8 Well, and any subsequent wells on the WD34 Property, to the other partners.

## IV. DECLARATORY JUDGMENT

15.  MERI reasserts paragraphs 3 through 11, inclusive.

16.  MERI seeks a declaration by the Court regarding the rights and obligations of the parties under the agreement(s) between the parties pursuant to 28 USC §2201 and Federal Rule of Civil Procedure 57. A justiciable controversy exists which makes this suit ripe for declaratory judgment as the parties are currently disputing the lease maintenance operation and other matters under one or more agreements between the parties.

17.  Accordingly, MERI seeks a declaration that:

(a) The re-completion plan on the No. 8 Well was the lease maintenance operation for the WD34 Property under the terms of the WD34 Operating Agreement;

(b) No aspect of the Farmout Agreement or the drilling of the No. 12 Well constituted a lease maintenance operation for the WD34 Property under the terms of the WD34 Operating Agreement;

(c) The Revised AFE No. 042358 was sent in conformance with the requirements of the WD34 Operating Agreement and the work was authorized by the partners and performed in accordance with the terms of the WD34 Operating Agreement;

(d) TXSO has no right, title or interest in the WD34 Property (other than TXSO's interest in and production from wells completed prior to April 1, 2004 which are producing, shut-in or temporarily abandoned); and,

(e) TXSO must execute assignments of it's right, title and interest in the WD34 Property (other than TXSO's interest in and production from wells completed prior to April 1, 2004 that are producing, shut-in or temporarily abandoned) to its partners.

## V. BREACH OF CONTRACT / DAMAGES REGARDING THE WD34 PROPERTY

18. MERI reasserts paragraphs 3-11, inclusive.

19. In the alternative, if, as TXSO claims in its Amended Complaint, it has retained its interest in the No. 8 Well and earned an interest in the No. 12 Well, TXSO is obligated to pay the costs and expenses associated with the lease maintenance operation conducted on the No. 8 Well and the drilling and maintenance of the No. 12 Well (under the terms of the Farmout Agreement). TXSO's portion of the joint interest billing for the re-completion of the No. 8 Well is, at a minimum, but not limited to, $977,431.65. TXSO's portion of the joint interest billing for the drilling and maintenance of the No. 12 Well is, at a minimum, but not limited to, $2,414.12. These amounts, to the extent not currently due and owing to FOC, are currently due and owing to MERI and TXSO's claimed retention of its interests but failure to pay these amounts constitutes a breach of the WD34 Operating Agreement.

## VI. BREACH OF CONTRACT / DAMAGES REGARDING HI552

20. MERI reasserts paragraphs 3 through 11, inclusive.

21. To date, TXSO has refused and continues to refuse to pay its portion of the operating expenditures incurred by MERI and/or MERI's predecessor-in-interest FOC at HI552 in the amount of at least $120,373.93. TXSO claims that it refuses to pay these amounts because it is allegedly owed certain amounts as a result of its audit of HI552, and because it has allegedly been and continues to be improperly billed at HI552. TXSO is not owed any amount, and has not been improperly billed, because the alleged "allocation" accounting procedure about which it complains in its audit is in full accordance and compliance with the Council of Petroleum Accountants Societies regulations—specifically, Section II. Direct Charges, Bulletin No. 13

13

(October, 1975). As a result, TXSO has no legal basis upon which to deny paying the amount of at least $120,373.93 that is either currently due and owing to MERI and/or MERI's predecessor-in-interest FOC and TXSO's failure to pay this amount constitutes a breach of the HI552 Operating Agreement and HI552 HOM Agreement.

## VII. UNJUST ENRICHMENT

22. MERI reasserts paragraphs 3 through 11, inclusive.

23. On or about July 1, 2004, production began on the No. 12 Well. TXSO has no right, title, or interest in this Well because it did not consent to the re-completion plan on the No. 8 Well, which was the lease saving operation. However, MERI's predecessor-in-interest FOC inadvertently paid TXSO as if it had an interest in the No. 12 Well, and TXSO has retained this money even though it has no right to do so.

24. To the extent not owed to FOC, MERI seeks recovery of all sums paid to TXSO on the No. 12 Well. TXSO has been unjustly enriched as it has no interest in the No.12 Well, and no right to retain such money.

## VII. ATTORNEY'S FEES

25. As a result of TXSO's actions, and to the extent not owed to FOC, MERI seeks recovery of the reasonable and necessary attorneys fees incurred in bringing this claim as provided by statute or as otherwise provided by law.

WHEREFORE, Defendant/Counter-Plaintiff Mariner Energy Resources, Inc. and Defendant Mariner Energy, Inc. pray that Plaintiff/Counter-Defendant Texas Standard Oil Company take nothing by its claims and that Defendant/Counter-Plaintiff Mariner Energy Resources, Inc. have judgment against TXSO as set forth herein. Defendant/Counter-Plaintiff Mariner Energy Resources, Inc. and Defendant Mariner Energy, Inc. also pray for such other and

further relief as the Court may deem just, necessary, proper or equitable.

## JURY DEMAND

38.     Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 38.1, Mariner Energy, Inc. and Mariner Energy Resources, Inc. hereby demand a jury trial on all their defenses and/or claims for affirmative relief.

Respectfully submitted,


By:   /s/ Bradley L. DeLuca
        Bradley L. DeLuca
        Federal Bar No. 11510
        TBA No. 05653800
        Brigid D. Ashcraft
        TBA No. 01372450
        Federal Bar No. 9033

**ATTORNEYS FOR DEFENDANTS
MARINER ENERGY, INC. AND
MARINER ENERGY RESOURCES, INC.**


OF COUNSEL:

JOHNSON DELUCA KENNEDY & KURISKY, P.C.
1221 Lamar, Suite 1000
Houston, Texas 77010
(713) 652-2525 - Telephone
(713) 652-5130 - Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2006, a true and correct copy of the foregoing document has been delivered in a manner prescribed by the Federal Rules of Civil Procedure to:

Francis I. Spagnoletti
David S. Toy
Spagnoletti & Co.
1600 Smith, 45th Floor
Houston, Texas 77002

                                        /s/ Bradley L. DeLuca
                                        Bradley L. DeLuca